UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BRENDA PABLO CONTRERAS,

    Plaintiff,

v.                                      Case No.:   2:23-cv-208-SPC-NPM

WAL-MART STORES EAST, L.P.,

    Defendant.

## OPINION AND ORDER

Before the Court are Defendant Walmart Stores East, L.P.'s Motion for Final Summary Judgment (Doc. 42), Plaintiff Brenda Pablo Contreras's response in opposition (Doc. 50), and Defendant's reply (Doc. 52). For the following reasons, the Court grants summary judgment.

### BACKGROUND[1]

This is a slip and fall case. In May 2020, Plaintiff entered Defendant's liquor store in Naples, Florida without issue. She saw nothing on the sidewalk on her way into the store. Plaintiff was in the store between five and fifteen minutes and purchased three or four bottles, which she carried out in a bag. As she left the store, Plaintiff looked toward her car, slipped on a "purplish brownish" substance with "little tiny seeds in it" on the sidewalk, and fell to

---

[1] All citations to docketed materials are to the document and page numbers in the CM/ECF header, which sometimes differ from a document's internal pagination.

the ground. She saw nothing on the sidewalk just before she fell. Nor did Plaintiff know what the substance was, where it came from, how long it had been on the sidewalk before she fell, or its temperature. She also did not have a shopping cart when she fell. Defendant's employees photographed the scene after Plaintiff reported it but before cleaning the area.

According to Defendant's policies and procedures, its employees are trained and tasked with inspecting and maintaining the premises—including the sidewalks—on an ongoing basis. Additionally, members of management perform exterior tours at least three times a day to ensure that the parking lot and sidewalk are well maintained.

Christian Tecuanapa, a Walmart cart pusher at the time of Plaintiff's fall, completed training on Defendant's policies and procedures when he was hired. His training included how to maintain and ensure a safe, clean parking lot and sidewalk and to immediately report any spill or substance he saw.

Tecuanapa was getting carts near the incident area approximately twenty minutes before Plaintiff slipped and fell and did not see the substance on the sidewalk. When Plaintiff fell, Tecuanapa was outside the store on his break. He could see the location where Plaintiff fell, but he did not see her fall or the substance on the ground.

## LEGAL STANDARD

Sitting in diversity, the Court applies Florida substantive and federal procedural law. *Global Quest, LLC v. Horizon Yachts Inc.*, 849 F.3d 1022, 1027 (11th Cir. 2017). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a material fact is in genuine dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The moving party bears the initial burden to show the lack of genuinely disputed material fact. *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008). If carried, the burden shifts to the nonmoving party to point out a genuine dispute. *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2018). At this stage, a court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *Rojas v. Florida*, 285 F.3d 1339, 1341–42 (11th Cir. 2002).

An inference deduced from the evidence must be "reasonable" to create a genuine dispute of material fact. *Berbridge v. Sam's E., Inc.*, 728 F. App'x 929, 932 (11th Cir. 2018) (citing *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982)). To be reasonable, the inference needs to be more

3

than "a guess or mere possibility." *Id*. Florida state courts guard against unreasonable inferences by prohibiting "inference stacking," the practice of making an inference "which has been superimposed upon an initial inference supported by circumstantial evidence." *Little v. Publix Supermarkets, Inc.*, 234 So. 2d 132, 134 (Fla. Dist. Ct. App. 1970) (citing *Voelker v. Combined Ins. Co. of Am.*, 73 So. 2d 403 (Fla. 1954)). While federal courts do not prohibit inference stacking,[2] the more inferences are stacked upon one another, the less likely the conclusion is that "reasonable and fair-minded [people] in the exercise of impartial judgment might draw from the evidence." *Daniels*, 692 F.2d at 1326.

## DISCUSSION

Slip and falls are a form of negligence, so a plaintiff must show duty, breach, causation, and damages. *Oliver v. Winn-Dixie Stores, Inc.*, 291 So. 3d 126, 128 (Fla. Dist. Ct. App. 2020). A business owes an invitee two duties: (1) to keep the premises reasonably safe; and (2) to warn of dangers the business knew (or should have known) about that the invitee couldn't discover. *Norman v. DCI Biologicals Dunedin, LLC*, 301 So. 3d 425, 428 (Fla. Dist. Ct. App. 2020). In a premises liability case, a business must have "actual or constructive

---

[2] *Berbridge*, 728 F. App'x at 932 (explaining that while federal courts are not bound to apply state law rules against inference stacking, state court decisions on summary judgment "may still be highly informative" and "[federal courts] aim to reach the same result that the Florida courts would reach based on the same facts").

4

knowledge of the dangerous condition." Fla. Stat. § 768.0755(1). The burden is on the plaintiff to make that notice showing. *Encarnacion v. Lifemark Hosps. of Fla.*, 211 So. 3d 275, 278 (Fla. Dist. Ct. App. 2017).

**A.   Actual Notice**

Actual notice of a dangerous condition exists when a business owner's employees or agents know of or create the dangerous condition. *Barbour v. Brinker Fla., Inc.*, 801 So. 2d 953, 957 (Fla. Dist. Ct. App. 2001). "When the negligence which produces the injury is that of an employee of the defendant, then the matter of the employer's knowledge of the existence of the dangerous condition becomes inconsequential because the knowledge of the employee is chargeable against the employer and his negligent act committed in the course of his employment is binding upon the employer." *Id*.

Defendant asserts "there is no record evidence that Walmart, or any of its employees, caused the condition to be on the floor or knew that it was present at any time before the incident." (Doc. 42 at 12). By contrast, Plaintiff vaguely argues "[t]he facts set forth above present multiple scenarios that create a question of fact as to whether . . . Walmart had constructive or *perhaps actual notice* of the substance's existence." (Doc. 50 at 16 (emphasis added)). And Plaintiff argues Tecuanapa "either did see the substance and failed to appreciate it, or certainly should have seen the substance[.]" (*Id.* at 2).

5

Plaintiff's assertions fall short. Fatal to her argument, she points to no evidence that Defendant or its employees caused the substance to spill on the sidewalk or knew it was there before she fell. There is no evidence that Tecuanapa ever saw the substance that caused Plaintiff's fall. (Doc. 42-4 at 65, 69). To the contrary, Tecuanapa testified that when he was retrieving carts, he was close enough that he would have seen the substance if it had been there. (*Id.* at 67). He testified that he did not see anything on the concrete then. (*Id.*) He also testified that he did not remember seeing the substance on the ground later when he was outside on his break. (*Id.* at 77–78). In sum, Plaintiff does not present evidence from which a reasonable jury could infer Defendant had actual notice.

**B.   Constructive Notice**

That said, Plaintiff need not prove Defendant knew about the substance because notice may be inferred through constructive knowledge under the right circumstances. *See Berbridge*, 728 F. App'x at 930. A plaintiff can establish constructive notice with circumstantial evidence that either: (1) "[t]he dangerous condition existed for such a length of time that, in the exercise of ordinary care, the business establishment should have known of the condition"; or (2) "[t]he condition occurred with regularity and was therefore foreseeable." Fla. Stat. § 768.0755(1)(a)–(b). The evidence offered in support may be direct or circumstantial. *Id.*

6

Plaintiff does not argue Defendant regularly had spills on the sidewalk, so the Court does not address that theory. Thus, to prevail, Plaintiff must show Defendant had constructive notice of the substance because of the length of time it was on the ground before her fall. Plaintiff tries to do so through evidence of the condition of the substance, Tecuanapa's proximity to the substance, and Defendant's alleged violation of its policies.[3] The Court analyzes each argument in turn.

1. *Condition of the Substance*

"The mere presence of the substance is not enough to establish constructive notice." *Sutton v. Wal-Mart Stores E., LP*, 64 F.4th 1166, 1169 (11th Cir. 2023) (internal quotation marks omitted) (quoting *Delgado v. Laundromax, Inc.*, 65 So. 3d 1087, 1090 (Fla. Dist. Ct. App. 2011)). "So, in the absence of direct evidence, Florida law requires that the plaintiff introduce circumstantial evidence of additional facts showing that the substance had been on the ground for an extended period before the slip-and-fall to survive summary judgment." *Id.* (cleaned up).

Evidence of "signs of age" like "dirt, scuffing, or tracks in a substance" can suffice. *Berbridge*, 728 F. App'x at 930 (citations omitted). Courts often

---

[3] Plaintiff also tries to show constructive notice through evidence of how the substance ended up on the ground. (Doc. 50 at 12). But her argument is based purely on Tecuanapa's speculation (Doc. 42-4 at 52–53), which is insufficient at the summary judgment stage. *See Espinoza v. Target Corp.*, 843 F. App'x 168, 172 (11th Cir. 2021). The Court discusses this theory no further.

refer to such evidence as "plus" facts. *See, e.g.*, *Carpio v. W. Beef of Fla., LLC*, 384 So. 3d 192, 194 (Fla. Dist. Ct. App. 2024); *see also Welch v. CHLN, Inc.*, 357 So. 3d 1277, 1279 (Fla. Dist. Ct. App. 2023) (evidence that plaintiff fell in "quite a bit" of "dirty," "murky," and "slimy" water that was of a "large amount" and had footprints "going in different directions" was sufficient to constitute a "plus" and preclude summary judgment); *Norman*, 301 So. 3d at 427, 430–31 (Fla. Dist. Ct. App. 2020) (finding plaintiff's testimony that he slipped in "a cup of water" that had "dirty" and "muddy footprints" was sufficient to satisfy the "plus" factor and preclude summary judgment).

It is undisputed that Plaintiff does not know what the substance was, where it came from, or how long it was on the ground before she fell. (Doc. 42 at 4). Plaintiff testified that she did not see anything on the sidewalk five to fifteen minutes earlier when she walked into the liquor store. (Doc. 42-1 at 39). Twenty minutes before Plaintiff slipped, Tecuanapa saw no substance on the ground. (Doc. 42-4 at 67).

So Plaintiff relies on evidence of shopping cart tracks through the substance to show that it was on the ground for a sufficient amount of time. (Doc. 50 at 10–12). For support, she cites testimony from Raidel Mendez, who is Defendant's corporate representative, and Tecuanapa. (*Id.* at 11–12). Mendez stated that based on his review of photographs of the substance, it appeared as though a shopping cart was pushed through the substance "and

8

then a slip." (Doc. 42-3 at 51). Tecuanapa also reviewed photographs from the scene. He observed that a cart passed through the substance, and someone stepped in it and slipped. (Doc. 42-4 at 50). Finally, Plaintiff states in an affidavit that the substance was "dry around the edges but wet in the middle." (Doc. 50 at 12; Doc. 50-4 at 2).

The Court is unpersuaded. "[T]he mere existence of plus facts is not dispositive to the issue as their existence must allow a jury to infer that the condition existed for a length of time sufficient to establish constructive notice without assuming other facts." *Leftwich v. Wal-Mart Stores E., LP*, No. 5D22-2821, 2024 WL 716972, at *2 (Fla. Dist. Ct. App. Feb. 22, 2024) (internal quotation marks and citation omitted). Here, both deponents' testimony confirms the undisputed existence of the track marks but reveals nothing about *when* they were made.

And, in any event, Plaintiff's testimony undermines her argument. After Plaintiff slipped, she put the bottles in her car before going into the store to report her fall to Defendant, leaving the substance unattended. (Doc. 42-1 at 48). Notably, Plaintiff testified that she did not have a shopping cart with her at the time of her fall, push a cart through the substance, or see the track marks *before* she went back into the store. (*Id.* at 39, 71–72). Once Plaintiff alerted Defendant that an incident had occurred, employees placed a cart over the substance to prevent another incident. (*Id.* at 72). Based on Plaintiff's

9

testimony, it is not reasonable to believe the tracks preceded her fall. Thus, the Court agrees with Defendant that Plaintiff cannot point to the track marks in the photograph to impute constructive notice upon Defendant.

Finally, the Court turns to Plaintiff's affidavit. A plaintiff may demonstrate constructive notice by identifying evidence that the substance was drying or had changes in consistency. *See Palavicini v. Wal-Mart Stores E., LP*, 787 F. App'x 1007, 1012 (11th Cir. 2019) (examples of evidence that can impute constructive notice include footprints, prior track marks, changes in consistency, or drying of liquid). Plaintiff now submits an undated affidavit—conveniently filed almost a year after she was deposed—stating that she "noticed the substance that [she] had slipped through was dry around the edges but wet in the middle." (Doc. 50-4 at 2).

At her deposition, Plaintiff recalled the substance was "purplish brownish darkish stuff, gooey stuff with little tiny seeds in it." (Doc. 42-1 at 43). She was "not sure" when asked whether the track marks were "fresh" or if "the substance had been smeared and spread out for quite some time." (Doc. 42-1 at 73). Nor could she recall the amount of space the substance took up. (*Id*. at 44). Ultimately, she was "unsure" what the substance was. (*Id*.). The affidavit is the first (and apparently only) evidence that the substance was dry around the edges but wet in the middle.

10

Defendant argues the Court should not consider the affidavit for two reasons. First, the affidavit contradicts her deposition testimony but provides no valid explanation for the contradiction. (Doc. 52 at 4). Second, "mere conclusions and unsupported factual allegations are legally insufficient to create a dispute to defeat summary judgment."[4] (*Id.* (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).

In the Eleventh Circuit, "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). But "there may be some occasions where a party may by affidavit clarify testimony given in his deposition and thereby create a genuine issue as to a material fact." *Id.* at 656.

The Court has carefully considered Defendant's argument that the affidavit contradicts Plaintiff's deposition testimony, and thus the Court should not consider such a "sham" affidavit. (Doc. 52 at 4). But it is arguably

---

[4] Notwithstanding the fact that Plaintiff's affidavit is self-serving and uncorroborated, the affidavit clearly contains factual allegations. *See United States v. Stein*, 881 F.3d 853, 859 (11th Cir. 2018) ("We do not mean to suggest that a self-serving and/or uncorroborated affidavit will always preclude summary judgment. We hold only that the self-serving and/or uncorroborated nature of an affidavit cannot prevent it from creating an issue of material fact."). So the Court easily rejects Defendant's second argument.

11

a close call whether the affidavit contradicts or merely supplements her testimony. And regardless, the Court need not decide the issue because the statement in the affidavit is insufficient to demonstrate constructive notice.

Even viewing all facts and drawing all reasonable inferences in the light most favorable to Plaintiff, there is simply not enough information in this record to reasonably infer when the substance ended up on the sidewalk. A "plus" fact must enable a jury to reasonably conclude that the substance was on the floor long enough to establish constructive knowledge. *Valdes v. Verona at Deering Bay Condo. Ass'n, Inc.*, No. 3D23-0362, 2024 WL 3049788, at *2 (Fla. Dist. Ct. App. June 19, 2024). Plaintiff's eleventh-hour "plus" facts simply do not suffice.

The crux of the problem is that the record does not reveal what substance caused Plaintiff's fall. Context matters. For instance, in *Colon v. Outback Steakhouse of Florida, Inc.*, the plaintiff slipped on a potato that was "mushy" and "dirty," which suggested "that it had gone undetected on the floor for a sufficient period of time to place Outback on constructive notice." 721 So. 2d 769, 771 (Fla. Dist. Ct. App. 1998). In *Camina v. Parliament Insurance Co.*, the plaintiff slipped on ice cream that was "thawed, dirty and splattered," which was sufficient to create an inference of constructive knowledge. 417 So. 2d 1093, 1094 (Fla. Dist. Ct. App. 1982). "In both cases, the facts gave some indication of the substance's original condition—that the potato was not dirty

12

when it fell from a customer's plate or a server's tray and that the ice cream was frozen—which allowed a jury to draw an inference from its altered condition." *Berbridge*, 728 F. App'x at 933.

Here, the evidence "shows little more than the presence of [a] dangerous condition." *Id.* The fact that the substance was dry around the edges and wet in the middle "gives rise to nothing more than a 'guess or mere possibility' that it was on the floor for a period of time sufficient to create constructive notice." *Id.* (citation omitted); *see also Encarnacion*, 211 So. 3d at 277 (no evidence that the substance, in its original condition, was not "oily," "dirty," and "dark"); *Wilson-Greene v. City of Miami*, 208 So. 3d 1271, 1275 (Fla. Dist. Ct. App. 2017) (no evidence that the soup was hot prior to being spilled). "Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment." *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) (citing *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 931–32 (7th Cir. 1995)).

In this case, because the record does not reveal exactly what the substance was and thus its original condition, the jury would have to speculate as much. Without knowing what the substance was, the jury would then have to speculate how long it took the edges of the unknown substance to dry but remain wet in the middle. Third, the jury would have to infer that the speculative length of time it took for the unknown substance to dry only on the

13

edges and remain wet in the middle was sufficient to confer constructive notice on Defendant. The Court declines to stack these inferences. Thus, Plaintiff has not created such a genuine issue of material fact on this issue as to require submission to a jury.

2. *Employee Proximity to the Substance*

Next, Plaintiff argues that Tecuanapa's proximity to the substance is sufficient evidence of constructive notice. (Doc. 50 at 13–14). Plaintiff contends that Tecuanapa was "close enough" to the area of the incident, "could have seen" the substance on the sidewalk, and failed to monitor and detect it. (*Id.* at 2, 13–14).

"Beyond the length of time, courts are more likely to find that a business had constructive notice when the business's employees were 'in the vicinity of where the fall occurred.'" *Torres v. Wal-Mart Stores E., L.P.*, 555 F. Supp. 3d 1276, 1283 (S.D. Fla. 2021) (quoting *Plott v. NCL Am., LLC*, 786 F. App'x 199, 203 (11th Cir. 2019)). However, Tecuanapa's presence—on this record—is not enough to establish constructive notice.

Tecuanapa was on a scheduled break and off duty when Plaintiff slipped. (Doc. 42-4 at 37, 70). Therefore, Plaintiff's emphasis on Tecuanapa being on his phone and not observing the sidewalk and parking lot is much ado about nothing. (Doc. 50 at 13 (citing Doc. 42-4 at 56)). An employee's phone use while off duty does not violate Defendant's policies. (Doc. 42-3 at 26). In any event,

Tecuanapa testified that he never saw the substance before or after Plaintiff's incident. (Doc. 42-4 at 65, 69). Rather, he testified that from where he sat while on break, he could see the general area where Plaintiff fell, but he was sitting too far away to see the surface of the concrete. (*Id*. at 65).

Plaintiff's reliance on Tecuanapa's testimony that if he had been paying closer attention or checked a bit closer, he would have noticed the substance and warned someone, is unavailing. (Doc. 50 at 13 (citing Doc. 42-4 at 32–33)). In *Straube v. Moran Foods, LLC*, the court addressed a similar argument, namely that "even if . . . employees did not have actual notice of the spill, they were close enough to the spill such that they should have discovered the spill had they exercised reasonable care." No. 8:16-CV-49-T-24 AEP, 2016 WL 6246539, at *3 (M.D. Fla. Oct. 25, 2016). In rejecting the plaintiff's argument, the *Straube* court reasoned that the facts did not support notice because the employees stood several feet away from where the plaintiff fell and were looking in the opposite direction. *Id*. Like the employees in *Straube*, Tecuanapa was "not looking" in Plaintiff's direction when she fell and "was sitting too far away" to see the surface of the concrete where she slipped. (Doc. 42-4 at 34, 65). Given this evidence, Tecuanapa's mere presence is insufficient evidence of constructive notice.

While Plaintiff relies on three state court cases, they are distinguishable. (Doc. 50 at 13 (citing *Markowitz v. Helen Homes of Kendall*

15

*Corp.*, 826 So. 2d 256, 261 (Fla. 2002); *Greenleaf v. Amerada Hess Corp.*, 626 So. 2d 263 (Fla. Dist. Ct. App. 1993); *Winn-Dixie Stores, Inc. v. Guenther*, 395 So. 2d 244, 245 (Fla. Dist. Ct. App. 1981)). In those cases, employees were in the "immediate vicinity" (*i.e.*, inches from) a grape, *Markowitz*, 826 So. 2d at 258, 261; could see an oily spill big enough to soak a plaintiff from their position, *Greenleaf*, 626 So. 2d at 263–64; or could see dirty liquid from an elevated platform in the store, *Winn-Dixie Stores*, 626 So. 2d at 245–46. But here, Tecuanapa was not standing next to the substance. In addition, there is no evidence that Tecuanapa could see the substance from where he sat while on break. *See Borroto v. Wal-Mart Stores E., LP*, No. 2:19-CV-356-FTM-38NPM, 2020 WL 6591193, at *4 (M.D. Fla. Nov. 10, 2020) (distinguishing *Markowitz* and *Greenleaf*); *Ayers v. Wal-Mart Stores, E., L.P.*, No. 15-24663-CIV, 2017 WL 747541, at *3 (S.D. Fla. Feb. 27, 2017) (distinguishing *Markowitz*); *Garcia v. Target Corp.*, 2013 WL 12101087, at *3 (S.D. Fla. Feb. 26, 2013) (same).

In sum, Tecuanapa's mere presence is not sufficient evidence to allow a reasonable jury to conclude that Defendant should have been on notice of the spill. *See Straube*, 2016 WL 6246539, at *3; *Garcia*, 2013 WL 12101087, at *3 (concluding that evidence that employees were putting away clothes ten to fifteen feet away in a separate area of the store and could not see the spill from where they were standing was not sufficient to allow a reasonable jury to

16

conclude that the defendant should have been on notice of the spill). This is not a case where the spill was at Tecuanapa's feet, and he did nothing about it. Nor is there any evidence that the spill was visible to him. *See Garcia*, 2013 WL 12101087, at *3; *see also Borroto*, 2020 WL 6591193, at *4 ("Because Borroto does not point to any evidence supporting an inference that the stocker could or should have seen the spill, this argument fails."); *Straube*, 2016 WL 6246539, at *3. There is simply insufficient evidence of employee proximity to support an inference of constructive notice.

    3.    *Defendant's Policies and Procedures*

Finally, Plaintiff's argument that Defendant violated its policies and procedures is a nonstarter. Plaintiff contends that a jury could infer that Walmart employees failed to follow the store's policies and procedures by not inspecting the area. (Doc. 50 at 14). She points to Tecuanapa's alleged failure to inspect the area where she fell and that the area "was not otherwise regularly traversed by Walmart employees because of the barriers set up near the area." (*Id.*)

First, Tecuanapa's testimony contradicts Plaintiff's assertion. He testified that twenty minutes before Plaintiff fell, he was "nearby enough" getting carts and would have seen the surface where she fell. (Doc. 42-4 at 67). He stated that he would have seen the area because he has "good eyesight" but did not see a substance on the ground. (*Id.*)Mendez also testified that despite

17

the barriers, the area where Plaintiff fell is not neglected or unmonitored because most Walmart associates come to work through that very area. (Doc. 42-3 at 60). Lastly, Plaintiff identifies no evidence that members of management do not follow Defendant's policy of performing exterior tours at least three times a day to ensure that the parking lot and sidewalk are well maintained. Based on the above, the Court agrees with Defendant that Plaintiff has not shown that a genuine issue of material fact exists regarding whether Defendant violated its policies and procedures.

At bottom, Plaintiff must provide evidence supporting a reasonable inference that Defendant had constructive notice of the substance. Such an inference cannot be "a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Daniels*, 692 F.2d at 1326. Because that is all Plaintiff could ask a jury to do over notice, summary judgment is proper.[5] *See Borroto*, 2020 WL 6591193, at *5.

Accordingly, it is now

**ORDERED:**

1. Defendant's Motion for Final Summary Judgment (Doc. 42) is **GRANTED**.

---

[5] Because the Court finds Plaintiff failed to demonstrate Defendant had actual or constructive notice, the Court need not address Defendant's arguments that the allegedly dangerous condition was open and obvious or that it had a duty to warn Plaintiff of a dangerous condition. (Doc. 42 at 10, 18).

18

2. The Clerk is **DIRECTED** to enter judgment, terminate all pending motions or deadlines, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on November 22, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies:  All Parties of Record